**MONTGOMERY v. STATE.   (8 Div. 823.)**

(Court of Appeals of Alabama.   April 19, 1921.
Rehearing Denied June 21, 1921.)

**1. Criminal law ⬅︎1121(2)—Error cannot be predicated on refusal of affirmative charge where bill of exceptions does not contain all the evidence.**

Where the bill of exceptions does not contain all the evidence, error cannot be predicated on refusal to give an affirmative charge.

**2. Homicide ⬅︎268—Whether defendant evaded arrest from consciousness of guilt or because of violation of prohibition law held for jury.**

Whether one accused of murder evaded arrest because of his violation of the prohibition law or from consciousness that he was guilty of criminal homicide *held* for the jury.

**3. Criminal law ⬅︎351(3)—Flight from consciousness of guilt is evidence of guilt.**

Flight from arrest, if prompted by consciousness of guilt, is a circumstance tending to show guilt.

**4. Criminal law ⬅︎554—Accused's interest in result may be considered in determining credibility.**

That accused is interested in the result may be considered in determining the credibility of his testimony.

**5. Criminal law ⬅︎1044—Objections to argument not considered in absence of motion to exclude.**

Objections to argument of counsel cannot be considered in the absence of a motion to exclude it from the jury.

**6. Criminal law ⬅︎543(1)—No error in reading absent witness' testimony given on former trial.**

Where counsel agreed that an absent witness' testimony "as given" on a former trial should be his testimony on the instant trial, the court did not err in allowing such testimony to be read.

**7. Criminal law ⬅︎815(4)—No error in refusal of incomplete charge.**

In a prosecution for murder, the court properly refused to charge that the fact that defendant assisted in and directed the hiding of deceased's body should not be considered against him if he did so, not because of a consciousness of guilt, but because of a suspended hard labor sentence and other cases pending against him, such charge being incomplete.

**8. Criminal law ⬅︎829(5)—Charge covered by charges given properly refused.**

A charge on self-defense, covered by charges given, was properly refused.

**9. Homicide ⬅︎300(12)—Instructions on justification and self-defense, not setting out elements, properly refused.**

In a prosecution for murder, the court properly refused charges to acquit if defendant was justified in shooting deceased in self-defense, even if he directed and assisted in the hiding of deceased's body and fled to avoid arrest; the elements constituting self-defense or justification not being set out.

On Rehearing.

**10. Witnesses ⬅︎268(1)—Testimony on cross-examination as to whether defendant surrendered to settle other cases against him properly excluded.**

Where the sheriff testified on cross-examination by defendant that the latter came to the jail and surrendered to him, his testimony as to whether defendant arranged to settle prohibition cases pending against him was properly excluded, as tending to make evidence for defendant.

**11. Witnesses ⬅︎268(9) — Cross-examination as to sheriff's conversations with solicitor and defendant's counsel properly excluded.**

In a prosecution for murder, the sheriff's testimony on cross-examination as to conversations with defendant's counsel and the solicitor in an effort to settle prohibition cases against defendant just before he surrendered was properly excluded.

**12. Homicide ⬅︎174(7)—Testimony as to settlement of prohibition cases against defendant shortly after his surrender held incompetent to explain flight.**

In a prosecution for murder, it was incompetent for defendant, in explanation of his flight from arrest to show that he settled certain prohibition cases against him a few days after he surrendered; such fact throwing no light on the cause of his flight.

**13. Witnesses ⬅︎237(1)—Question as to suspended sentence against defendant accused of murder while dodging from prohibition cases held improper.**

In a prosecution for murder, a question as to whether there was a suspended hard labor sentence against defendant for violation of the prohibition law at the time "he was dodging from those prohibition cases" was improper, as assuming that he was dodging on account of violation of the prohibition law.

**14. Criminal law ⬅︎400(2)—Testimony as to suspended sentence properly excluded, as not the best evidence.**

Testimony as to whether there was a suspended sentence against defendant for violation

*of* the prohibition law was properly excluded, if competent; there being better evidence of such. sentence.

**15. Homicide ☞174(8) — Testimony as to whether defendant talked about giving up properly excluded.**

In a prosecution for murder, a question as to whether defendant talked of coming in and giving up was objectionable, where the character and relevancy of such talk did not appear.

**16. Homicide ☞174(8) — Testimony that defendant told witness about suspended road sentence for another. offense properly excluded as irrelevant.**

In a prosecution for murder, testimony as to whether defendant, while evading arrest, told the witness about his suspended road sentence for another offense was properly excluded as irrelevant.

**17. Homicide ☞174(8) — Testimony as to what defendant said was his reason for dodging arrest properly excluded.**

In a prosecution for murder, where all the facts in connection with defendant's evasion of arrest and his reason therefor were in evidence, testimony as to whether he told the witness he was dodging the officers because of the prohibition cases and a suspended hard labor sentence was properly excluded.

**18. Criminal law ☞548 — Testimony as to when absent accomplice, whose testimony at former trial was read in evidence, left, held admissible in determining credibility.**

In a prosecution for murder, testimony that an accomplice, whose testimony for defendant at a former trial was read in evidence, left while the grand jury which indicted defendant was in session, and that his present whereabouts were unknown, was admissible in determining the credibility of his testimony.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge. 

Will Montgomery was convicted of manslaughter, and he appeals. Affirmed.

Certiorari denied 207 Ala. 713, 91 South. 923.

The exceptions to evidence sufficiently appear from the opinion of the court.

The following charges were refused to the defendant:

(1) If the defendant directed and assisted in hiding Nelson's body, not because of a consciousness of guilt from killing Nelson, but because of a suspended hard labor sentence, and other cases pending against him, and you so find from the evidence, then the fact that the defendant directed and assisted in hiding Nelson's body a short time after the killing should not be considered by you against the defendant in this case.

(2) If from all the evidence you find that the defendant was free from fault in provoking or bringing on the difficulty, and could not retreat without increasing his peril, and if you further

find that at the time the defendant shot Nelson, the defendant honestly believed, and the facts and circumstances were such as to justify a reasonable man in the belief, that Nelson was about to shoot to kill the defendant, then you should find the defendant not guilty, although you find that the defendant directed and assisted in hiding the body an hour or so after the killing, and then fled or hid out to avoid being arrested.

(4) If you find from all the evidence that the defendant was justified in shooting Nelson in self-defense, then he should be acquitted, and the fact that defendant after the killing helped or directed in the hiding or disposal of the body would not warrant a conviction.

(6) If the defendant killed Nelson in self-defense, then he should be acquitted, although you find that he helped to hide or dispose of the body without giving notice to Nelson's people.

(7) If after a consideration of all the evidence you have a reasonable doubt as to whether or not the defendant was justified in killing Nelson in self-defense, then you should find him not guilty, although he directed and assisted in hiding the body·an hour or so after the killing, and then hid or fled to avoid arrest.

(10) It is immaterial in this case that the defendant directed and assisted in hiding Nelson's body an hour or so after the killing, if the defendant was justified in killing Nelson to protect himself from being killed by Nelson.

(16) It is immaterial in this case that the defendant directed the hiding of Nelson's body, and then fled or hid out to avoid arrest, if you find, after due consideration of all the evidence, that the defendant was ·justified in killing Nelson,. in order to keep Nelson from killing him.

The other facts sufficiently appear from the opinion.

Sample & Kilpatrick, of Hartsells, for appellant.

The defendant was entitled to the affirmative charge as to murder and manslaughter in the first degree. 16 C. J. 551, 763. The defendant should have been permitted to corroborate his testimony as to why he hid out, etc. 183 Ala. 66, 63 South. 8; 146 Ala. 61, 41 South. 624; 15 Ala. App. 262, 73 South. 139. Evidence as to the flight of Ward was illegal and inadmissible. 160 Ala. 30, 49 South. 810. Counsel discuss the refused charges, and in support of their insistence cite. 8 Ala. App. 23, 62 South. 383.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

See former report of this case, 17 Ala. App. 469, 86 South. 132.

The record does not purport to contain all the evidence, and therefore the refusal to give the affirmative charge will not be reviewed. 16 Ala. App. 239, 77 South. 77. There was no error in the admission or rejection of evidence. The court properly charged as to defendant's interest in the

---

verdict. 1 Ala. App. 48, 55 South. 956. There was no error in refusing the charges requested by the defendant. 8 Ala. App. 211, 62 South. 382.

MERRITT, J. This is the second appeal in this case, the first appeal being reported in 17 Ala. App. 469, 86 South. 132, Montgomery v. State. In the instant case the defendant was placed on trial on a charge of murder in the second degree. He was found guilty of manslaughter in the first degree, and his punishment fixed at five years in the penitentiary.

[1] There was no error in refusing to give the written affirmative charge requested by the defendant. The record recites:

"This was all the evidence offered by the defendant, except that of the witness Oscar Roan, and this was all the evidence offered in the trial of the case, except that of Oscar Roan."

It thus clearly appears that the bill of exceptions does not contain all the evidence in the trial of the case; therefore error cannot be predicated on the refusal to give the affirmative charge. Bridgeforth v. State, 16 Ala. App. 239, 77 South. 77.

[2] The appellant's contention that he was denied the right by the trial court to make proof of his reason for remaining in hiding and evading the officers for several months after the killing in May until November, when he gave himself up, is not borne out by the record. While we do not decide that one can give his reason for evading arrest, as a matter of fact in this case the defendant, as was shown by his testimony and other witnesses, at and before the time of the killing, was under certain charges for violating the prohibition law, under a suspended sentence for an infraction of these laws, was in hiding and so remained, until settlement had been made of all of them, and that he then surrendered to the sheriff for the slaying of Red Nelson. These facts being in evidence, it was for the jury to say as to what reason prompted the evasion of the officers, whether it was on account of the violations of the prohibition laws, or from a consciousness that he was guilty of criminal homicide.

It being shown by the testimony of Leldon Ward that Lum Ward was also under indictment for the killing of Red Nelson, there was no error in allowing the solicitor to ask the witness Leldon Ward where his father, Lum Ward, was when he left, and to show that he left while the grand jury was in session that indicted the appellant. Besides the testimony disclosed that Lum Ward was present when appellant shot Red Nelson, that he assisted appellant in hiding the body of Nelson, and that, in a conversation between Lem Turney, Lum Ward, and appellant, shortly after the killing, appellant stated he shot Nelson, and that Ward cut his throat.

[3] We think that part of the court's oral charge excepted to by the defendant was free from error, and that it correctly states the law applicable to the facts in this case. As stated before, the appellant testified as to his dodging the officers, the time of the evasion, and testified to facts which he insists prompted this evasion. Considering the fact that the defendant admitted the killing of Nelson; the hiding of his body; that previous thereto and at that time he was under charge of a violation of criminal laws of the state, it was for the jury, from a consideration of these and all other facts in evidence, to conclude whether the flight was from a consciousness of guilt, and, should this conclusion be reached, then the flight so concluded became a probative fact, and was some evidence, a circumstance, tending to show the guilt of the defendant. Not only may the jury conclude that under all the evidence, if the defendant fled, that it was from a consciousness on defendant's part that he was guilty, or in this case that he did not act in self-defense, but, having so concluded, such flight became a fact, a circumstance, tending to show his guilt. Goforth v. State, 183 Ala. 66, 63 South. 8; Underhill on Evidence (2d Ed.) § 118; Ross v. State, 74 Ala. 532, Bowles v. State, 58 Ala. 335.

[4] There was no error in the court's charge in reference to the jury considering the fact that the defendant was interested in the result, and that, if convicted, he would have to suffer punishment, in determining what credibility should be accorded his testimony. Weaver v. State, 1 Ala. App. 48, 55 South. 956.

[5] With respect to the objections made to the argument of the solicitor, it need only be said, there was no motion made to exclude it from the jury. B. R., L. & P. Co. v. Gonzales, 183 Ala. 273, 61 South 81, Ann. Cas. 1916A, 543; Jackson v. State, 11 Ala. App. 304, 66 South. 877.

[6] We cannot say that the trial court was wrong in its construction of the agreement of counsel in reference to the testimony of Lum Ward. It appears that the testimony was read, and the agreement was "that the *testimony* as *given* upon the former trial should be his testimony upon this trial."

[7] Charge numbered 1 was properly refused for the reason that it is incomplete.

[8] Charge numbered 2 was covered by other given written charges and the court's oral charge, and for these reasons was properly refused.

[9] Charges 4, 6, 7, 10, and 16 are bad, for the reason that they do not set out the elements constituting self-defense or justification. Garth v. State, 8 Ala. App. 23, 62 South. 383.

There is no error in the record, and the judgment appealed from is affirmed.

Affirmed.

## On Rehearing.

[10] The sheriff, a witness for the state, on cross-examination testified that the defendant "came to the jail and surrendered to me, and told me that he was ready to give up." Counsel for the defendant then asked him, "Told you that he had arranged so that he could settle all the prohibition cases pending against him?" The court sustained the solicitor's objection, and in so doing there was no error. This testimony tended to make evidence for the defendant, and the declaration did not come within the rule laid down in Goforth's Case, 183 Ala. 66, 63 South. 8.

[11] The defendant then asked the witness, "You had a number of conversations with Mr. Brindley, who was representing the defendant, and with the solicitor, who was prosecuting Montgomery, in an effort to settle these prohibition cases just before he came in and surrendered?" The objection to this question on the part of the solicitor was properly sustained.

[12] The conversation called for was as to matters between third parties, and was clearly incompetent. Besides it is not disclosed as to the nature of the conversations called for. It was also incompetent for the defendant to show that within a few days after he surrendered he settled the prohibition cases against him. Assuming that his flight was on account of the pendency of these prohibition cases, it would be a far flight of the imagination to say that the fact that he settled these cases shortly after his surrender could in any wise throw any light on the cause of his flight. And the question, propounded to the sheriff, as to whether he knew how or what disposition was made of the prohibition cases, was equally objectionable.

[13, 14] The following question was then asked the witness:

"At the time the defendant was dodging from those prohibition cases * * * there was a suspended hard labor sentence against the defendant for the violation of the prohibition law?"

This question was subject to the objection that it assumed as a conclusion that the defendant was dodging on account of the violation of the prohibition laws, and, if competent, there was better evidence of the suspended sentence.

It was an opinion and conclusion of the witness Turney that the defendant had been dodging the officers for four or five months because of the suspended sentence and the charges for violating the prohibition law, and for these reasons the objections to the question were properly sustained.

[15] The question to the witness Jim Ward, "When you would see Montgomery, would he talk about coming in and giving up?" was patently objectionable. The question does not disclose the character of "talk," and its relevancy does not appear.

[16] The witness was then asked this question:

"Did he tell you he could not afford to give up because of several whisky cases against him, and did he tell you about a suspended road sentence?"

The trial court was not in error in overruling the objection of the state, on account of the last question about the road sentence, if for no other reason. It does not appear how a road sentence could in the least have been relevant to any issue in the case.

[17] The defendant's witness, Dr. Brindley, was asked the following question:

"Did Will Montgomery tell you that he was dodging because of several prohibition cases pending against him and because of the suspended hard labor sentence?"

We do not think this conversation comes within the rule laid down in the Goforth Case, supra. The fact of the existence of these cases, and that they were not settled until the defendant gave himself up, was in evidence, and it was not for the defendant to give his reasons for evading the officers; this was a conclusion to be drawn by the jury from all of the evidence.

As stated in the opinion in this case, the defendant by his testimony without objection was permitted to give, not only the reason for his evasion, but the facts in connection therewith. We may here state that these facts and reasons were not only testified to by the defendant, but by other witnesses, both state and defendant's witnesses.

In his application for rehearing the defendant, while admitting the above, contends that the defendant was entitled to make further corroboration of his and other witnesses as to these facts and reasons so testified to, and points out the corroborative testimony which he sought to introduce, and claims that the trial court erred in not permitting him to do so. We have therefore dwelt above specifically with each particle of the testimony in reference to which complaint is made, and are of the opinion that the exclusion of no part of it does violence to the rule laid down in the Goforth Case, supra, and that its exclusion was entirely in keeping with well-accepted rules of evidence governing such subjects. Certainly, to our minds, the defendant got the full benefit of all the testimony that could have shed any light on the fact or reasons for his flight, and we cannot see how he has been injured on account of the rulings of the trial court on this aspect of the case.

[18] No grounds of objection were assign-

ed to the questions propounded to the witness Leldon Ward as to where his father, Lum Ward, was, and when he left. These questions were not subject to general objections. As we gather from the record, Lum Ward had testified as a witness for defendant at the former trial of Montgomery; his testimony tending to corroborate the contention of the defendant that he acted in self-defense, and it was this testimony of Lum Ward that had been offered in this case again for the defendant. If, then, the state could, it was permissible for it to show that Ward had left, and at what time he left; these facts to be considered by the jury, along with his other testimony, in determining what credibility should be attached to his testimony. In addition, this was proving nothing more than that which was in effect agreed to in the beginning of the trial; that is, that the witness Lum Ward was absent.

Moreover, the witness Jim Ward testified without objection as follows:

"I do not know where my brother Lum Ward is now. As well as I remember he went off last fall. He was here at Montgomery's former trial. After Will Montgomery was tried and convicted he left here. I do not know where he is now. His family is up at my father's. I have not seen him since that time."

Application for rehearing overruled.