76 So.2d 684

**John Will GRIMES**

v.

**STATE.**

**4 Div. 270.**

Court of Appeals of Alabama.

Dec. 21, 1954.

Alice L. Anderson, Enterprise, for appellant.

Si Garrett, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Alfred Goldthwaite, Montgomery, of counsel, for the State.

HARWOOD, Judge.

This appellant has been convicted of possessing prohibited alcoholic beverages.

The alleged possession occurred in Coffee County, a "dry" county in this State.

The evidence presented by the State tends to show that Mr. Bob Norris, an enforcement officer for the Alabama Beverage Control Board and Mr. Gunter and Mr. Latiker, deputy sheriffs of Coffee County, under the authority of a search warrant, searched the appellant's house on the afternoon of 9 January 1954.

The appellant was not present at the time the search was made, but appellant's wife and a Mrs. Jordan, who worked and lived in appellant's home, were present.

In the kitchen the officers found a four gallon churn under a table. The churn was covered with a cloth and a plate was on top of the cloth.

The churn was practically full of a fermenting concoction.

Mr. Norris, who has been an officer with the Alcoholic Beverage Control Board for some thirteen years, testified that the concoction in the churn was made of "sugar, water and either shorts or meal, a few apples chopped up in it, a few raisins and some orange peeling." He further testified that "it was well on in a fermenting stage, working right along; and I tasted of it and it tasted as if it had alcohol, quite a bit of it."

The concoction, according to Mr. Norris, looked, smelled, and tasted like beer, and was of a type generally used for drinking.

Mr. Norris testified further that it would take from three to five days for the con-

coction to have reached the stage of fermentation he found it in.

According to Mr. Norris, Mrs. Grimes stated to him that she was making it for her children to drink.

The other two officers gave testimony largely corroborative of Mr. Norris' testimony, though not quite as detailed. No purpose would be served in setting out their testimony.

For the defense Mrs. Grimes, appellant's wife, and Mrs. Jordan, who lived in appellant's home, testified that the churn was kept in the kitchen and used as a sort of garbage can. Mrs. Grimes testified she did not know what Mrs. Jordan, who did the cooking, may have thrown in it, though she, herself, had put some apple peeling in the churn at Christmas time.

Mrs. Jordan testified that the only thing she had put in the churn was some meal bran, irish potatoe peelings and salt.

Both women denied that any raisins or orange peels were in the churn.

Mrs. Grimes denied she had told Mr. Norris that she was making the contents of the churn for her children to drink.

On cross examination Mrs. Jordan testified that it was appellant's house and kitchen that the churn was found in; that the appellant was "in and out" of the kitchen, and did not pay any attention to what was in the churn.

The appellant's testimony was to the effect that he was not aware that the churn was in the kitchen, and knew nothing about it or its contents.

In rebuttal Mr. Norris testified that if salt had been poured into the churn it would have prevented the contents from fermenting.

Because of the varied factual situations furnishing the background in the innumerable cases involving unlawful possession of alcoholic beverages, it is difficult to work out from them any clearly defined pattern.

It is definite however that where possession of the beverage is constructive,

the State, to sustain a conviction, must show, in addition to the constructive possession, a guilty knowledge of the presence of the beverage. And, as in all criminal prosecutions the guilty knowledge, or scienter, on the part of the accused, must be fastened upon him by a showing of facts or circumstances enabling a jury to conclude beyond a reasonable doubt that the accused knew such fact. This for the reason that verdicts and judgments of guilt in criminal cases cannot rest upon speculation, surmise, or suspicion.

Illustrative of the principles governing our conclusions we note the following cases in which the evidence has been held sufficient to establish the possession and scienter:

Gilbert v. State, 25 Ala.App. 169, 142 So. 682: Two sixteen gallon kegs of whiskey were found in defendant's home. The court stated that this, without more, was insufficient to sustain the conviction. However, the defendant made certain incriminatory statements to the officers which the court found sufficient to show scienter.

Leach v. State, 24 Ala.App. 423, 136 So. 493: Ten gallon keg of liquor found under defendant's bed room, with a pipe up through the floor. The defendant tried to divert the officers from the area during the search and fled upon their discovery of the keg.

Prouty v. State, 24 Ala.App. 454, 136 So. 492: A certain statement in the opinion in this case would seem to indicate that constructive possession alone is sufficient to sustain a conviction for illegal possession of prohibited liquor. However we have examined the original record and find that the State's evidence tended to show that the accused was the sole occupant of the house in which the liquor was found.

Mickle v. State, 31 Ala.App. 141, 13 So. 2d 100: Twenty-five gallons of whiskey found buried in a woodhouse rented by accused, the accused having placed a lock on the woodhouse after leasing it, and having thereafter been observed entering and leaving the woodhouse.

Thomas v. State, Ala.App., 66 So.2d 189:[1] Liquor found in a rather elaborately constructed secret cache constructed in appellant's home, the cache being opened by crank found in another part of house.

Fletcher v. State, 33 Ala.App. 423, 34 So.2d 860: Twelve pints of whiskey found in a trap constructed over window in a house occupied by accused and his wife. The defense offered no evidence. However, the only point decided in this case related to the refusal of the general affirmative charge, no motion for a new trial having been made.

On the other hand, it has been held that evidence of guilty knowledge was not shown in the following cases:

Allen v. State, 21 Ala.App. 23, 104 So. 867: Officers found three bottles of whiskey in a coal house on defendant's premises. The coal house was unlocked and the defendant was absent at the time of the search.

Phillips v. State, 22 Ala.App. 97, 112 So. 810: Liquor found in shack occupied by accused and several other men. Accused absent at time of search.

Talbot v. State, 23 Ala.App. 559, 129 So. 323: Small quantity found in accused's home by a third party who entered accused's home in his absence. Other members of accused's family resided in home.

Eldridge v. State, 24 Ala.App. 395, 135 So. 646: Defendant absent when liquor found in cotton seed hull pile on his premises. Tracks led from hull pile to defendant's house.

Alford v. State, 26 Ala.App. 188, 155 So. 388: Three pints of whiskey found on sill under defendant's house, the defendant being absent at time of search.

Bivens v. State, 27 Ala.App. 304, 171 So. 755: Liquor found in a sack of peanuts in a back room of defendant's house. Two other adults lived in house.

Pruitt v. State, 27 Ala.App. 137, 166 So. 730: Sheriff searched defendant's house in his absence. A pint bottle of whiskey was found in a pair of overalls in a bed room. Other adults also resided in the house.

We will not labor this opinion with additional cases pertaining to the matter now under consideration. Such cases are innumerable. The thumb nail sketches above set out we think sufficient to illustrate our conclusions.

■ Threaded through these cases is the principle that where illegal beverages are found on the premises of an accused during his absence, and other persons also occupy the premises, then the circumstance of the beverage being found on the premises is not sufficient, without more evidence, to establish scienter to the degree required to support a conviction for illegal possession.

■ The appellant in this case may be guilty. However, to conclude beyond a reasonable doubt that he had guilty knowledge of the four gallons of beer found in his kitchen requires resort to speculation and surmise. Actually, the only evidence from which scienter might be inferred was the statement by Mrs. Jordan on cross examination that the appellant was "in and out" of the kitchen. Both women claimed the appellant was unaware of the churn or its contents, as did the appellant. A four gallon churn in a kitchen, a domain usually controlled by the women of a house, is hardly an object which in itself would create suspicion on the part of the average male or give notice as to its illegal contents. Certainly such fact is insufficient to overcome appellant's presumption of innocence.

It is our conclusion therefore that the State has failed to carry its burden in this case and therefore the court erred in denying appellant's requested affirmative charge with hypothesis.

Reversed and remanded.